**Edward SCHWARTZ**

v.

**S. P. RYDER, Regional Director, Third U. S. Civil Service Region, Philadelphia, Pa.**

**Civ. A. No. 18597.**

United States District Court
E. D. Pennsylvania.

July 18, 1955.

William J. Woolston, Philadelphia, Pa., for plaintiff.

W. Wilson White, Eugene J. Bradley, Philadelphia, Pa., for defendant.

LORD, District Judge.

This case is before the Court on defendant's motion to dismiss the Complaint for failure to join an indispensable party.

Plaintiff claims he was illegally removed from his position as a substitute clerk at the United States Post Office

in Philadelphia. He contends that he was not given a proper hearing. In his complaint, plaintiff alleges that he was given notice of his suspension from employment and received a statement of charges preferred against him. He further alleges that he requested and was granted a hearing on the charges. Thereafter, he received notice that his continued employment was not clearly consistent with the interests of the national security.

Plaintiff asks this Court to issue an order granting plaintiff a hearing in accordance with due process or directing his re-employment by the Post Office Department.

Defendant moved for dismissal on the basis that this Court lacks jurisdiction because of the failure to join the Postmaster General, an indispensable party.

Authority for the action taken against plaintiff was given by Congressional Act,[1] and Executive Order.[2] Based on

1. Act of Aug. 26, 1950, c. 803, § 1, 64 Stat. 476, 5 U.S.C.A. § 22–1, which provides in part as follows:

"* * * the Secretary of State; Secretary of Commerce; Attorney General * * * may, in his absolute discretion and when deemed necessary in the interest of national security, suspend, without pay, any civilian officer or employee of the Department of State * * * *Provided*, That to the extent that such agency head determines that the interests of the national security permit, the employee concerned shall be notified of the reasons for his suspension and within thirty days after such notification any such person shall have an opportunity to submit any statements or affidavits to the official designated by the head of the agency concerned to show why he should be reinstated or restored to duty. The agency head concerned may, following such investigation and review as he deems necessary, terminate the employment of such suspended civilian officer or employee whenever he shall determine such termination necessary or advisable in the interest of the national security of the United States, and such determination by the agency head concerned shall be conclusive and final: *Provided further*, That any employee having a permanent or indefinite appointment, and having completed his probationary or trial period, who is a citizen of the United States whose employment is suspended under the authority of sections 22–1 to 22–3 of this title, shall be given after his suspension and before his employment is terminated under the authority of said sections, (1) a written statement within thirty days after his suspension of the charges against him, which shall be subject to amendment within thirty days thereafter and which shall be stated as specifically as security considerations permit; (2) an op-

portunity within thirty days thereafter (plus an additional thirty days if the charges are amended) to answer such charges and to submit affidavits; (3) a hearing, at the employee's request, by a duly constituted agency authority for this purpose; (4) a review of his case by the agency head, or some official designated by him, before a decision adverse to the employee is made final; and (5) a written statement of the decision of the agency head: *Provided further*, That any person whose employment is so suspended or terminated under the authority of said sections may, in the discretion of the agency head concerned, be reinstated or restored to duty, and if so reinstated or restored shall be allowed compensation for all or any part of the period of such suspension or termination * * *."

2. Exec. Order No. 10450, 18 Fed.Reg. 2489 (1953), 5 U.S.C.A. § 631 note as amended, which provides in part as follows:

"Section 1. In addition to the departments and agencies specified in the said act of August 26, 1950 [section 22–1 et seq. of this title] * * * the provisions of that act shall apply to all other departments and agencies of the Government.

\* \* \* \* \*

"Sec. 6. Should there develop at any stage of investigation information indicating that the employment of any officer or employee of the Government may not be clearly consistent with the interests of the national security, the head of the department or agency concerned or his representative shall immediately suspend the employment of the person involved if he deems such suspension necessary in the interests of the national security and, *following such investigation and review as he deems necessary*, the *head of the department or*

such authority, the Postmaster General issued Security Regulations, 39 Code Fed.Regs. §§ 135.51 to 135.59 (Cum. Supp.1954).

Thereunder, when a hearing is requested, it is heard before a board composed of at least three impartial, disinterested persons nominated by the Personnel Security Officer of the Postal Establishment (Sections 135.55(h) (4) and 135.58(d)). The decision of the hearing board is forwarded to the Postmaster General, together with all papers and exhibits (Section 135.55 (h) (4)). The entire case is reviewed by the Postmaster General before a final decision of the final action to be taken is made (Section 135.55(h) (5)). The employee is then furnished a written statement of the decision of the Postmaster General (Section 135.55(h) (6)).

■ The Postmaster General had the power to make this decision affecting plaintiff. Defendant could take no final action in plaintiff's case.

According to the test established in Williams v. Fanning, 1947, 332 U.S. 490, 493, 68 S.Ct. 188, 189, 92 L.Ed. 95,[3] the Postmaster General is an indispensable party to this suit. Only the Postmaster General has the power and responsibility of making the final decision on what action to take against an employee. Any complaint to be redressed must be directed to him. Daggs v. Klein, 9 Cir., 1948, 169 F.2d 174; Money v. Wallin, 3 Cir., 1951, 186 F.2d 411.

Plaintiff cites three cases in support of his argument. However, they are clearly distinguishable from the instant case. In Williams v. Fanning, supra, the Supreme Court held that the Postmaster General was not an indispensable party in a suit against the local postmaster by a party against whom the Postmaster General had issued a fraud order. The Supreme Court pointed out however, that the relief requested by the plaintiff would expend itself on the subordinate official who was before the court. Such relief requested in the present case would not expend itself on the subordinate official. The only official who has power to act in this case is the Postmaster General and subordinates under his express direction.

In the second case cited by plaintiff, Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, the Court held that the Commissioner of Immigration and Naturalization is not an indispensable party in an action against a District Director to review a deportation order. But it also explained the finality of a District Director's actions, 349 U.S. at pages 52–53, 75 S.Ct. at pages 594–595:

"District Directors are authorized by regulation to issue warrants of deportation to designate the country to which an alien shall be deported, and to determine when his mental or physical condition requires the employment of a person to accompany him. The regulations purport to make these decisions of the District Director final."

There is no such finality in the present case, until the Postmaster General acts. 39 Code Fed.Regs. § 135.55(h) (5) (6) (Cum.Supp.1954).

The third case cited by plaintiff, Peters v. Hobby, 349 U.S. 331, 75 S.Ct. 790, is not applicable. There, the Court decided that the Loyalty Review Board had exceeded its powers given under a Presidential Order. No issue of indispensable party arose.

---

*agency concerned shall terminate the employment* of such suspended officer or employee whenever he shall determine such termination necessary or advisable in the interests of the national security, in accordance with the said act of August 26, 1950 [section 22–1 et seq. of this title]." (Emphasis supplied.)

3. "These cases evolved the principle that the superior officer is an indispensable party if the decree granting the relief sought will require him to take action, either by exercising directly a power lodged in him or by having a subordinate exercise it for him."

It appears clear to this Court that the final decision on removal of an employee of the Postal Service in the interests of the national security rests with the Postmaster General. He is an indispensable party to this suit. Consequently, this Court is without jurisdiction in the present case.